which involves the same council. So we'll move on to Carter versus the Cook County Sheriff. Mr. Flaxman, what's unique about this case? Thank you, Your Honor. This case was decided on a 12 v. 6 motion to dismiss. The district judge was applying decisions in Kelly-Olmec, Wilson v. Evanston, and Conyers v. Chicago. He mistakenly said that the plaintiffs were prisoners in the IDOC. I don't know where that came from, but everybody was out of custody when the case was filed. The Carter complaint squarely presents the three constitutional theories. The Fourth Amendment, Fifth Amendment, and Fourteenth Amendment. I think we covered it before. If there are questions, I'll be glad to try to answer them. The government in Tyler argues that the abandonment occurred before the government seized Tyler's property. And the government in this case is arguing that the abandonment occurred after the government seizure and Carter failed to adhere to the process. Aren't these differences material between Tyler and this case? No, I don't think they are. I think that the common thread in Tyler is that you can't infer an abandonment by creating a rule saying if you don't do something in a particular time period, you have abandoned your rights. You can't do that unless there's some compelling reason to do that or even a rational reason to do that. Here, the sheriff just wants to get rid of the property and says if you don't pick it up, we're going to throw it away. Is the timing immaterial to you? The timing of the abandonment? I would say no. That's certainly an issue that the sheriff could try to raise as an affirmative defense if we get to that point. I don't think they raised that in summary judgment. Question, looking at Tyler, I know that there are two cases that the Supreme Court really leaned into in explaining when there's been a takings clause violation. It looked particularly at Nelson v. New York and the Texaco case. In the Nelson v. New York case, as they explained in that dealing with the New York property, is that the reason why the takings clause had not been violated there is because this property right and the surplus that was available, there was a process for the property owner to come back behind, I think it was 20 days, to come back behind New York and request that surplus. The Supreme Court talks through why Nelson is still good law after Tyler, the linchpin being that there was process available so that the property, the abandonment, I guess, that New York had declared in Nelson, there was a process for that property owner to come back and show their intent, their intent of not abandoning the property. And so because that process was in place, Nelson v. New York remains good law after Tyler. Looking here, kind of at this case, and we saw similar to that in Texaco. In the Texaco case, the use of the property included either continuing to mine there or filling out that form that says, I still have an intent, and because neither one of those things were followed, Texaco is still good law. In Minnesota, in Tyler, in the Tyler case, what was unique was after taking the property for purposes of taxes, there was no process for Ms. Tyler to request that her property be returned. And so you can't come back, Minnesota, and say, of course she abandoned the house because you didn't give her process. And so when we're looking at the facts of this case, and this is where I'm asking when you said Tyler kind of sets the stage in why Conyer is no longer good law, what do we do with the notion that process is still available before that property is destroyed? Process is notice and an opportunity to be heard. The notice that was given to every prisoner who went to IDOC from the jail is on this waiver form, which says the IDOC will not accept this property. We have to have somebody pick it up or we're going to throw it away. That was incorrect. That was bad advice. That was just laziness on the part of the sheriff that didn't want to open these bags to take out the state ID. And there's no court to go to for your state ID to get back. That makes it a viable remedy. So the notice is inadequate. Oh, yeah. The notice is not just inadequate. It's misleading and erroneous. And I think we actually discussed that. All right. Thank you. Ms. Wasserman. May it please the court. Plaintiffs failed to state a claim under the takings clause, the Fourth Amendment or substantive due process. Unless there's preliminary questions, I will address each briefly. Why don't we go to takings first. Tyler and Texaco both say that abandonment requires decades. Here we've got 45 days. Does that present a problem for the sheriff? So I think a big distinction is dealing with real property versus the identification cards here. And, again, so Tyler, the Supreme Court, actually stated that the case wasn't about abandonment at all. And an important part there is that in Tyler, you know, that case dealt with failure to pay taxes, which obviously can be due not to an intent to abandon your home but for inability to pay. We don't have, you know, a parallel here. Here all plaintiff doesn't allege that he was unable to, again, designate someone to pick up his property or anything like that. So I think that's a big distinction. But to drill down on the point, though, don't we see that in Tyler the government was arguing that the reason why Ms. Tyler's not entitled to the property right of the surplus is because she abandoned her home? Correct. And that argument was rejected. And, again, I think the Supreme Court discusses that, you know, the forfeiture law at issue there didn't deal with the use of the property at all. It just dealt with inability to pay the taxes. And that's why they reject the government's argument and conclude that the scheme, the forfeiture scheme, isn't actually about abandonment, whereas here we are dealing with an abandonment analysis. Again, here plaintiff has given us no reason to contradict the court's conclusion that he abandoned his property. So you're saying this policy is not a forfeiture scheme? So I think we – so plaintiff here abandoned his property. Even, you know, assuming that he didn't abandon his property, I think that the policy would still be constitutional just in the sense that it doesn't implicate these claims. Again, adequate notice is given and an adequate opportunity to get the property. Again, we're not dealing with those facts here where he's alleging anything to kind of dispute abandonment. So that's the basis of our argument. But again, he still fails to state a constitutional violation. Is the policy a forfeiture scheme? The policy is not a forfeiture scheme akin to Tyler. I mean, I guess the property is being destroyed if he doesn't claim it. I wouldn't characterize it as a forfeiture scheme, but I guess in a sense he's, you know, forfeiting his property rights in the sense that he is abandoning the property. But I think it's distinct from Tyler and the other cases cited, again, because here he's, you know, given the opportunity to retrieve the property. There's no cost at issue here. Nothing like that is being alleged. And I can also – I can move on to the Fourth Amendment if there's not further questions about the taking. Again, Plaintiff is given no reason to overturn Lee and state that there should be a continuing seizure theory under the Fourth Amendment. I know he talks about the Supreme Court's decision in Thompson which dealt with malicious prosecution. Again, that obviously it deals with people as opposed to property, but even so, the malicious prosecution analysis, the court makes clear that the – that analysis looks at whether or not there was probable cause to initiate an arrest, which similar to this court in Conyers when it was explaining why Manuel did not change its analysis, that deals with the initial seizure and the legitimacy of that initial seizure. So there's nothing in Thompson that would change this court's Fourth Amendment jurisprudence. And again, I know I've covered substantive due process earlier. I'm happy to address any questions that this court might have. What about the notice? The misleading notice. So Plaintiff states that there was false and misleading notice. It's, again, a conclusory allegation. He doesn't explain why it's false or misleading. It seems to be that he's arguing that it's false and misleading because he thinks it doesn't comply with Illinois law. But again, an attempt to enforce state law isn't sufficient to state a constitutional violation. And he's not arguing it's misleading in that he didn't understand that if he took no action, the notice would be destroyed. He seems to just think it's misleading in the sense that it contradicts Illinois law. But that's not sufficient to state a constitutional violation. And if there are no further questions, we ask that you affirm the decision. Thank you. Mr. Flaxman, anything further? None. Thank you. None. Thank you. Our thanks to all counsel. The case is taken under advisement. We'll move to our third case this morning.